**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
MARGARET KOEHLER,

                   Plaintiff,

          -against-

NEW YORK CITY, NEW YORK CITY
DEPARTMENT OF EDUCATION, JOEL KLEIN (in
individual capacity and as Chancellor of the Department
of Education), MARIA DISTEFANO (in individual
capacity and as Principal of P.S. 108), THERESA
EUROPE (in individual capacity and as Director of the
Office of Special Investigations),

                   Defendants.
------------------------------------------------------------------------x

04 Civ. 6929 (RMB)

**DECISION AND ORDER**

**I.    Background**

On or about August 26, 2004, Margaret Koehler ("Koehler" or "Plaintiff"), a probationary teacher employed by the New York City Department of Education ("DOE"), filed a complaint against the City of New York, the DOE, Joel Klein, Maria DiStefano, and Theresa Europe (collectively, "Defendants").[1]  Koehler complains that, following an incident of alleged corporal punishment of a student, the details of which are largely undisputed, she was given an Unsatisfactory Rating ("U-Rating") for the academic year 2003-2004, was discharged, and her New York City teaching license was revoked.

On January 3, 2005, an amended complaint was filed ("Amended Complaint" or "Am.

---

[1] It does not appear that defendant Maria DiStefano was properly served in this action. See Court Docket Report, Document #3 ("Mark Distefano served on 9/10/2004 . . ."); see also Mem. of Law in Supp. of Defs.' Mot. for J. on the Pleadings, dated Jan. 14, 2005 ("Def. Mot."), at 2 n.1 ("This motion is made by defendants City of New York, New York City Department of Education, Joel Klein, and Theresa Europe.  Upon information and belief, defendant Maria DiStefano has not been served in this action, and therefore no appearance is made on her behalf.").

Compl."), alleging, among other things, violation of Plaintiff's due process rights under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. "Plaintiff was not given a meaningful opportunity to be heard in refutation of [] charges of corporal punishment" and Plaintiff was deprived of "her constitutionally protected liberty interest by [Defendants'] . . . placing stigmatizing information in her personnel file that would reasonably be expected to be disclosed on inquiry imposing upon the Plaintiff a substantial disability with respect to her ability to gain future equivalent employment." (Am. Compl. ¶¶ 22, 34.) Koehler seeks, among other things, "that the DOE be enjoined from disclosing that the plaintiff was dismissed on account of any accusation or finding of corporal punishment, and that the plaintiff be removed from the ineligible list, [and] for costs and disbursements of this action including reasonable attorneys fees . . ." (Id. at 6-7.)

On or about January 18, 2005, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c), arguing, among other things, that Plaintiff "has failed to exhaust all of the administrative and contractual remedies available to her, and these administrative and contractual remedies have provided plaintiff with all of the process required under the law" and that "to the extent plaintiff attempts to assert a denial of a liberty interest in her reputation, she was provided all of the process she was due under law." (Def. Mot. at 2.) On or about February 28, 2005, Koehler filed a Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Opp'n"), stating, among other things, that "there is no requirement that Plaintiff exhaust her administrative and contractual remedies before resorting to federal court in proceedings brought pursuant to 42 U.S.C. § 1983" and "Plaintiff has a liberty interest as allegations [of corporal punishment] are 'career ending' and [she] has challenged their truth in the pleadings." (Pl. Opp'n at 6, 14.) Plaintiff also asserts that Defendants failed to

2

address her claim that "Plaintiff was no[t] provided with appropriate training or guidelines to be on notice that she had violated [the Chancellor's regulations regarding corporal punishment or verbal abuse]." (Am. Compl. ¶ 29.) Along with Plaintiff's Opposition, Koehler filed an Affidavit dated February 28, 2005 ("Koehler Aff."), stating that "I have caused the attached letter to be sent to the United Federation of Teachers – Queens Borough Representative, requesting that my appeal of the 'U' rating be withdrawn" and "[t]herefore, there is no pending grievance." (Koehler Aff. ¶¶ 2-3.) Defendants filed a reply memorandum on March 14, 2005 ("Def. Reply").

**For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is granted.**

## II. Background

The Court assumes the following facts alleged in the Amended Complaint to be true, see Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995):

In September 2002, Plaintiff began teaching as a probationary teacher at Public School 108 in Ozone Park, New York. (Am. Compl. ¶ 8; Pl. Opp'n at 2.) "On or about May 22, 2004, a [seven year-old] child in plaintiff's class, defined herein as Child A, failed a math quiz administered by plaintiff" and "was directed by plaintiff to bring the test home and have his parents sign it." (Am. Compl. ¶¶ 10-11.) Instead of placing the test in a designated folder, "he . . . stuck it in a file that never goes home" and upon inquiry, "lied about the whereabouts [of the test]." (Id. ¶¶ 11-14.) "After the plaintiff located and recovered the test, she . . . wrote a letter to the parent, pin[n]ing the note and the failed quiz onto the T-shirt of [Child A] to be taken home." (Id. ¶ 16.)

On May 25, 2004, the parents of Child A met with the school principal, Maria DiStefano

3

("DiStefano"), and "complained . . . that plaintiff had pinned a note on their child." (Id. ¶ 17; Pl. Opp'n at 3.) Pursuant to DOE Regulation of the Chancellor A-420 regarding corporal punishment ("Regulation A-420"), DiStefano reported the incident to the DOE's Office of Special Investigations ("OSI") and was directed to "investigate [the] allegation." (E-mail from Kondos to DiStefano dated May 26, 2004, Ex. 5 to Answer to Am. Compl. dated Jan. 14, 2005 ("Answer"); see also Regulation A-420, Ex. 10 to Answer, at 3-5.) "On or about June 1, 2004, plaintiff was summoned to [DiStefano's office and] advised to attend the meeting . . . with a union representative as the meeting may lead to disciplinary charges." (Am. Compl. ¶ 20.) On June 1, 2004, Koehler and her union representative, Ms. Klein, met with DiStefano, during which time DiStefano reviewed the allegations against Koehler and the results of the investigation. (Letter from DiStefano to Koehler dated June 7, 2004, Ex. 4 to Answer ("June 7, 2004 DiStefano Letter").) Koehler had the opportunity to read a statement at the June 1, 2004 meeting, which described the May 24, 2004 incident and explained her actions. (See Letter from Koehler to Giaramita dated June 27, 2004, Ex. 7 to Answer ("June 27, 2004 Giaramita Letter").) The A-420 report, dated June 4, 2004, was completed by DiStefano, who concluded that the allegations against Plaintiff were substantiated. ("Alleged Corporal Punishment and/or Verbal Abuse, Report of Investigation," Ex. 2 to Answer ("A-420 Report"), at 4.) DiStefano also sent a letter to Plaintiff, dated June 7, 2004, summarizing the June 1, 2004 meeting and stating, "After reviewing the complaint against you, the complainant's statement, the witnesses' statements and your explanation, I conclude that you did pin the note and test on the child's chest, causing the child embarrassment and mental distress. This violates Chancellor's Regulations A-420 for corporal punishment . . . [and may] lead to further disciplinary action, including a suspension without pay,

4

unsatisfactory rating and/or the termination of your employment." (June 7, 2004 DiStefano Letter.) The June 7, 2004 DiStefano Letter was acknowledged and signed by Koehler. (Id. ("I have received a copy of this letter and understand that the original will be placed in my official file.").)

Pursuant to DOE Regulation of the Chancellor C-31 ("Regulation C-31" or "Circular-31"), which "sets forth procedures to be followed to terminate the New York City license(s) of untenured pedagogical employees," on or about June 14, 2004, Koehler submitted a written appeal of her "U-Rating & Discontinuance/Denial" to the DOE Office of Appeals and Review ("Office of Appeals and Review"). (See Regulation C-31, Ex. 9 to Answer; June 14, 2004 Appeal, Ex. 6 to Answer.)[2] In support of her appeal, Plaintiff submitted a letter to the DOE Region 5 Learning Support Center, dated June 27, 2004, explaining her actions and requesting reconsideration. (June 27, 2004 Giaramita Letter ("I did not use physical force to pin the note [to Child A]. . . . The child was almost proud to have the note pinned to him, because he pointed out the note to the other students. . . . Pinning the note to the child was not[] meant as a punishment either. It was meant as a surefire way for me to know that the right people, the family, would read the note. . . . I hope that after reading this letter you will reconsider terminating my probationary status and reconsider the termination of my teaching license . . .").) On or about July 14, 2004, Plaintiff's appeal was denied. (July 14, 2004 Lloyd-Bey Letter ("This is to inform you that, after reviewing your written

---

[2]It appears that Plaintiff remained at P.S. 108 until after the end of the school year, i.e. on or about July 21, 2004. (See June 27, 2004 Giaramita Letter, at 2 ("If Ms. Maria DiStefano found me guilty of Corporal punishment and told me that I no longer had a job at PS 108, why was I still allowed (required) to finish out the school year?"); Letter from Lloyd-Bey to Koehler dated July 14, 2004, Ex. 8 to Answer ("July 14, 2004 Lloyd-Bey Letter") ("discontinuance of probationary service and termination of your license [is] effective close of business July 21, 2004").)

5

response I reaffirm your discontinuance of probationary service and termination of your license effective close of business July 21, 2004.").)

On or about November 23, 2004, Koehler was notified that a (review) hearing of the July 14, 2004 denial of her C-31 appeal was scheduled for December 21, 2004 before the Chancellor's Chairperson, and that the Principal of P.S. 108, two assistant principals, and the Region 5 Hearing Officer were all required to attend. ("Notice to Probationer" dated Nov. 23, 2004, Ex. 10 to Answer ("Notice"), at 1.) At the December 21, 2004 review hearing, Plaintiff would have been entitled to "be represented by an advocate selected by the Union," "present all relevant evidence," "call witnesses in [her] behalf," and "cross-examine witnesses." (See Regulation C-31, § 3.2.3.) Plaintiff does not dispute that she failed to appear on the December 21, 2004 hearing date. (See Answer ¶ 24.) On or about December 22, 2004, the DOE received a "Waiver Form" from Plaintiff, which stated, "I understand that the Office of Appeals and Reviews is ready to schedule the Review of my appeal . . . I am requesting a waiver at the present time, because . . . I am waiting for the results of my Step 3 grievance." ("Waiver Form" dated Dec. 15, 2004, Ex. 10 to Answer ("Waiver Form"), at 2-3.) The Office of Appeals and Review granted Plaintiff's request for a postponement upon receiving her (untimely) waiver form. (Answer ¶ 24.) Ultimately, no review hearing was held.

### III. Standard of Review

"The test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). In reviewing a motion to dismiss, "the court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." Bolt Elec., 53 F.3d

at 469 (citations omitted). Dismissal of the claim is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996). "[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quotations omitted).

"In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings." Withrow v. Donnelly, 333 F. Supp. 2d 108, 110 (W.D.N.Y. 2004); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

### IV.    Analysis

The parties dispute the following legal issues: (A) whether Plaintiff's failure to exhaust her administrative, union and state law remedies precludes suit in federal court; (B) whether Plaintiff adequately has alleged that she was deprived of a liberty interest without due process; and (C) whether Plaintiff adequately has alleged municipal liability for deliberate indifference in the training of investigators.

**(A)    Exhaustion of Remedies**

Plaintiff argues that "[t]he Supreme Court has categorically stated that an individual <u>need not</u> exhaust his or her administrative remedies as a prerequisite to action under 42 U.S.C. § 1983." (Pl. Opp'n at 6.) Defendants respond that "[w]hile plaintiff is correct in her assertion in the broad sense," it is well-settled that "an action brought under § 1983 for an alleged violation of the Due Process Clause cannot lie where the state has provided an adequate post[-]deprivation remedy."

(Def. Reply at 5.)

Exhaustion of administrative, union and state law remedies is not "categorically" required before an individual may resort to federal court under § 1983. Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982); Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir. 1998) ("Patsy's categorical statement that exhaustion is not required and the expansive view of the federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures"). But, while Plaintiff is not required to exhaust state remedies, "if there are adequate state remedies, the plaintiff cannot complain that he [or she] was denied procedural due process based on the absence of such remedies." Nocera v. N.Y. City Fire Comm'r, 921 F. Supp. 192, 202 n.5 (S.D.N.Y. 1996). Thus, the pertinent inquiry is whether the administrative, union and state procedures available to Plaintiff satisfied due process. See Campo v. N.Y.City Employees' Ret. Sys., 843 F.2d 96, 103 (2d Cir. 1988) (conclusion that "state may provide procedural due process in either an administrative or a judicial setting" does "not offend the doctrine of nonexhaustion of state remedies set forth in Patsy v. Board of Regents"); Ludd v. Rockville Ctr. Union Free Sch. Dist., No. 86 Civ. 2413, 1990 WL 137388, at *4 (E.D.N.Y. Sept. 17, 1990) (the "court is not concerned with whether plaintiff actually pursued an Article 78 proceeding before commencing this action, but with whether the availability of a pre-termination Article 78 proceeding, when considered together with all other available procedures, provides him with all the process to which he is due under the Constitution") ("Ludd II").

**(B)    Due Process Claim**

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." Zinermon v.

8

Burch, 494 U.S. 113, 125 (1990) (emphasis in original).  "In analyzing a procedural due process claim, courts apply 'the familiar two-step inquiry.  The Court must determine (1) whether the plaintiff possessed a liberty or property interest and, if so, (2) what process was due before he could be deprived of that interest.'"  Jenkins v. Area Coop. Educ. Servs., 248 F. Supp. 2d 117, 130 (D. Conn. 2003) (quoting Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)).

**Liberty Interest**

Plaintiff concedes that as a probationary employee she does not possess a property interest in continued employment.  See Pl. Opp'n at 14; see also McDonald v. Bd. of Educ. of N.Y., No. 01 Civ. 1991, 2001 WL 840254, at *5 (S.D.N.Y. July 25, 2001) ("Generally, New York is free to terminate probationary teachers without a hearing because they have no constitutionally protected property interest in their continued employment.").  "Plaintiff sues to vindicate a 'liberty interest', contending that she can show both harm to her reputation and serious damage to her prospects for future employment as a teacher."  Pl. Opp'n at 14; see also Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 43 (2d Cir. 1987) ("A government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities.'") (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573 (1972)).  Defendants argue that Plaintiff "does not deny that she committed the act that led to her termination" and Plaintiff fails to allege "that defendants published the 'stigmatizing' statements about her termination."  (Def. Mot. at 14.)

Whether Plaintiff adequately has alleged deprivation of a liberty interest in her reputation need not be determined because, as shown below, Koehler has failed to show a deprivation of due

9

process.  See Ludd v. Rockville Ctr. Union Free Sch. Dist., No. 89 Civ. 2413, 1990 WL 31650, at *12 (E.D.N.Y. Mar. 9, 1990) (declining to address whether plaintiff's liberty interest was implicated "in light of a more fundamental defect in plaintiff's claim," namely that plaintiff had not shown that state procedural remedies were inadequate) ("Ludd I").

**Alleged Deprivation of Due Process**

Defendants argue that "Plaintiff had the opportunity to present her case and possibly clear her name at the C-31 proceeding, and failing that, she could have challenged the result of the C-31 proceeding in an Article 78 proceeding . . . Thus, it is clear that all of the process plaintiff was entitled to under the law was made available to her." (Def. Reply at 6.)  Koehler argues that "Plaintiff need not review her constitutional claim before the very agency that she claims violated her rights in the first place as would occur if plaintiff availed herself of a Circular-31 hearing" and that, in any event, a C-31 hearing is inadequate and does not satisfy due process because "the individual is entitled to be represented by a union advocate, not an attorney;" "there is no provision for discovery in a C-31 proceeding;" and "no damages may be awarded in a C-31 proceeding."  (Pl. Opp'n at 6, 8, 10.)

The pleadings and exhibits attached thereto demonstrate that Plaintiff was provided with (at least) three different procedural opportunities and fora to air her complaints.  See Jenkins, 248 F. Supp. 2d at 130 ("The essential elements of due process are notice and an opportunity to be heard."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (due process requires only that a public employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story").

First, Plaintiff participated in DOE administrative proceedings held pursuant to Regulation

C-31. (See Regulation C-31, §§ 2-3.) Koehler was provided by DiStefano with both oral and written notice of the charges against her and an explanation of the evidence of DiStefano's investigation. (See, e.g., June 7, 2004 DiStefano Letter ("On June 1, 2004, I met with you and your union representative, Ms. Klein, to review an allegation against you that was made by . . . parents of [Child A], a student in your class. . . . At our meeting, I shared with you the specific allegation made against you . . . and shared the statements of the witnesses who were interviewed.").) Plaintiff was also afforded several opportunities to present her version of the facts, both at the June 1, 2004 meeting with DiStefano, see June 7, 2004 DiStefano Letter (summarizing Plaintiff's response to allegations and stating, "You stated at our meeting that you wanted to make sure [Child A] would take the test home for his parent to see."); June 27, 2004 Giaramita Letter, at 1 (quoting Plaintiff's "Statement read on June 1, 2004 describing the incident on May 24th, 2004"), and on appeal to the DOE Community Superintendent, see June 27, 2004 Giaramita Letter, at 2 ("pinning notes to a child is a surefire way of making sure notes get home to parents, not [] a way to punish the child"). These administrative procedures are integral to the "root requirement" of due process "that an individual be given an opportunity for a hearing before he is deprived of any significant property [or liberty] interest." Boddie v. Connecticut, 401 U.S. 371, 379 (1971); see also Loudermill, 470 U.S. at 545-46 (pretermination opportunity to be heard "need not be elaborate" nor "definitively resolve the propriety of the discharge" but rather is "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action").

Pursuant to Section 3 of Circular-31, Plaintiff was notified that a formal review hearing to consider her discontinuance was scheduled for December 21, 2004, during which she was entitled

to "be represented by an advocate selected by the Union," "present all relevant evidence," "call witnesses in [her] behalf," and "cross-examine witnesses." (See Regulation C-31, § 3; see also Notice ("In accordance with the provisions of Section 4.3.2 of the Bylaws of the New York City Department of Education, a review of the above [C-31/Discontinuance–July 21, 2004] by the Chancellor's Chairperson is scheduled as follows . . .").) Plaintiff does not dispute that she waived her right to participate in the review hearing. (See Answer ¶ 24.) She was later granted a postponement when she submitted an (untimely) Waiver Form. (See id.; Waiver Form at 1-2 ("I am requesting a waiver [of review of my appeal] at the present time . . .").)

      Second, Plaintiff also appears to have pursued—but then waived—available union grievance procedures. See Waiver Form at 1-2 ("I am waiting for the results of my Step 3 grievance. . . . Step I - Principal's Level; Step II - Superintendent's Level; Step III - Chancellor's Level; Step IV - Arbitration"); see also Costello v. Town of Fairfield, 811 F.2d 782, 786 (2d Cir. 1987) ("It is well settled that a procedure for post-deprivation arbitration of grievances created under a collective bargaining agreement may, in appropriate circumstances, satisfy the requirements of due process.") (Van Graafeiland, J., concurring). By affidavit, dated February 28, 2005, Koehler informed the Court that "I have caused the attached letter to be sent to the United Federation of Teachers – Queens Borough Representative, requesting that my appeal of the 'U' rating be withdrawn" and "[t]herefore, there is no pending grievance." (Koehler Aff. ¶¶ 2-3.) Here again, Plaintiff was afforded an opportunity to be heard (through her union), but she ultimately chose not to pursue it. See Gonzalez v. City of New York, 135 F. Supp. 2d 385, 398 (E.D.N.Y. 2001) ("[T]he Second Circuit has repeatedly held that a grievance procedure in a collective bargaining agreement is generally sufficient to satisfy due process, and the failure to

12

take advantage of that procedure forecloses a due process argument."); see also Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (plaintiff's "failure to submit to the grievance procedures precludes consideration of the fairness of those proceedings in practice").

Third, a state court Article 78 proceeding was available to Koehler both before and after her termination. "Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners," Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996), and "is the customary procedural vehicle for review of administrative determinations," Mitchell v. Fishbein, 377 F.3d 157, 170 (2d Cir. 2004) (quotations omitted).[3] See also Ludd II, 1990 WL 137388, at *3 ("Article 78 . . . available *prior* to termination in the form of a mandamus petition to compel the School Board's compliance with required procedures.") (emphasis in original); Moore v. N.Y. City Dep't of Educ., No. 03 Civ. 2034, 2004 WL 691523, at *4 (S.D.N.Y. Mar. 31, 2004) ("To the extent plaintiff believes that the hearing officer reached an erroneous conclusion, plaintiff could have challenged the results at an Article 78 proceeding."); Verri v. Nanna, 20 F. Supp. 2d 616, 622 (S.D.N.Y. 1998) ("Had plaintiff brought an Article 78 proceeding, he would have been afforded all of the process that he was due under the Constitution and an opportunity to compel the Board to comply with any procedures required under state law.") (citations omitted).

Plaintiff does not allege that she at any time initiated an Article 78 proceeding. "Because the State provided [Plaintiff] with notice of the charges against her and an opportunity to clear her

---

[3]"A petitioner in an Article 78 proceeding is permitted to submit affidavits and other written proof of their claim, and where a triable issue of fact is raised, the petitioner may obtain a trial." Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881 (quotations omitted).

name through an Article 78 proceeding, her due process rights were not violated." Rivera v. Cmty. Sch. Dist. Nine, Nos. 00 Civ. 8208, 01 Civ. 1976, 2002 WL 1461407, at *7 (S.D.N.Y. July 8, 2002) ("Rivera II"); Ludd I, 1990 WL 31650, at *12 ("Because of the availability of Article 78, this court dismisses plaintiffs' procedural due process claim for failure to demonstrate inadequate state procedural remedies."); see also Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 97 (E.D.N.Y. 2004) (due process claim dismissed because plaintiff's "own pleadings conclusively demonstrate that he was afforded all process due him").[4]

Finally, Plaintiff has failed to allege that "the full panoply of procedures provided by New York state are inadequate" and instead has "simply focused on an alleged deficiency in one stage, while 'ignoring those safeguards and remedies that are built into the whole.'" Verri, 20 F. Supp. 2d at 622; Ludd I, 1990 WL 31650, at *12.[5] In light of the availability of several appeal mechanisms—none of which Plaintiff pursued to completion—Plaintiff's arguments regarding the alleged inadequacy of C-31 procedures are unpersuasive. See Liotta v. Rent Guidelines Bd. for the City of N.Y., 547 F. Supp. 800, 802 (S.D.N.Y. 1982) ("Plaintiff[] cannot manufacture a § 1983 claim by pointing to the allegedly defective [hearing] while ignoring that part of the regulatory process that serves to redress administrative error."); see also Rivera v. Cmty. Sch. Dist. Nine, 145 F. Supp. 2d 302, 308 (S.D.N.Y. 2001) ("New York's general procedures for terminating

---

[4] "[T]he fact that Article 78 may not now be available [because it is time-barred] would not affect the result herein because [plaintiff] had available an Article 78 remedy whether she timely utilized it or not." Campo, 843 F.2d at 102 n.6 ("N.Y. Civ. Prac. L. & R. 217 provides for a four-month statute of limitations for Article 78 actions."); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave [plaintiff] a meaningful opportunity to challenge [the dismissal], he was not deprived of due process simply because he failed to avail himself of the opportunity.").

[5] In Plaintiff's Opposition, Koehler argues that certain aspects of a C-31 hearing do not satisfy due process. (See Am. Compl. ¶ 22; Pl. Opp'n at 9-10.)

probationary teachers have already been upheld against due process challenges by both federal and New York state courts.") ("Rivera I"); Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881 (Article 78 proceeding "is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.").

### (C) Municipal Liability

Plaintiff argues that "[i]t has long been settled that municipalities [and decision-makers] may be liable for unconstitutional acts of their employees" under Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978), and that the Amended Complaint states a Monell claim for "indifference or negligence [] exhibited by Defendants in the training of investigators including principals designated by OSI to conduct investigations." (Pl. Opp'n at 21-22.)[6] Defendants respond that "there can be no liability under Monell if there is no underlying constitutional violation" and that "[i]nasmuch as the DOE provided plaintiff with all of the due process she was entitled to, plaintiff has not suffered a constitutional violation, and, as such, there can be no liability under Monell." (Def. Reply at 8.)

Defendants are correct. In the absence of constitutional injury, a Monell claim does not lie. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Williams v. N.Y. City Police Dep't, 930 F. Supp. 49, 54 (S.D.N.Y. 1996) ("[plaintiff] has failed to present evidence of a constitutional violation in his case, and that failure would preclude municipal liability").

## V. Leave to Amend

Plaintiff is granted leave to amend. Pursuant to Rule 15(a) of the Federal Rules of Civil

---

[6]The United States Supreme Court held in Monell that "municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." DiSorbo v. Hoy, 343 F.3d 172, 179 (2d Cir. 2003); Monell, 436 U.S. at 694-95.

15

## V.	Leave to Amend

Plaintiff is granted leave to amend. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a); see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

## VI.	Conclusion & Order

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings [12] is granted with leave for Plaintiff to amend within thirty (30) days from the date of this Decision and Order.

The parties are requested to appear at a status/settlement conference with the Court on Tuesday, May 31, 2005, at 12:00 p.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

Dated: New York, New York
       May 11, 2005

_____
RICHARD M. BERMAN, U.S.D.J.